FILED

JUL 29 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HOLLY JOHNSTON,

    Plaintiff,

v.

KIMBERLY-CLARK GLOBAL SALES LLC,

    Defendant.

CV 10-540-PK

FINDINGS AND RECOMMENDATION

PAPAK, Magistrate Judge:

    Plaintiff Holly Johnston filed this action against defendant Kimberly-Clark Global Sales LLC ("KCGS") in the Multnomah County Circuit Court on April 1, 2010, alleging KCGS' liability for intentional interference with economic relations. KCGS removed the action to this court on May 11, 2010. This court has jurisdiction over Johnston's action pursuant to 28 U.S.C. § 1332(a), based on the complete diversity of the parties and the amount in controversy.

    Now before the court is KCGS' motion (#9) to dismiss for failure to state a claim upon which relief can be granted. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth below, I recommend that KCGS' motion be denied.

Page 1 - FINDINGS AND RECOMMENDATION

## LEGAL STANDARD

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*, *quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R. Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), *citing Iqbal*, 129 S. Ct. at 1949.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994),

*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## FACTUAL BACKGROUND

Johnston makes the following material allegations in support of her claim:

3.

Plaintiff was employed by Banner & Witcoff, Ltd., a law firm, in Portland, Oregon as an associate attorney from October 10, 2006 until March 1, 2010, when she was terminated by said law firm after Defendant's interference, as hereinafter alleged.

4.

Prior to plaintiff's termination she was an employee in good standing with said law firm. however, she had brought suit against a company named I-Flow Corporation ("I-Flow"), the manufacturer of a pain pump designed to deliver pain relief medication, which device had caused Plaintiff injury after being surgically implanted in Plaintiff's left knee some years earlier.

5.

At all material times Defendant was a client of Banner & Witcoff, Ltd., Plaintiff's then employer. Prior to Plaintiff's termination, and while her case against I-Flow was pending, Defendant acquired I-Flow. After that acquisition, Defendant complained to Banner & Witcoff, Ltd. that she was maintaining a suit against one of its companies, and pressured Banner & Witcoff, Ltd., and her personally, to have her drop her suit or settle it cheaply. When she refused to do that Defendant intentionally interfered with Plaintiff's employment with Banner & Witcoff, Ltd. by continuing to complain about her continued employment with Banner & Witcoff, Ltd., and did so for an unlawful purpose, to wit, to retaliate against her for maintaining a suit against one of Defendant's subsidiaries.

6.

As a further result of said unlawful interference, Plaintiff has suffered and will suffer emotional distress all to her non-economic damage in an amount to be proven at trial, which amount is alleged to be $250,000, which amount is subject

Page 3 - FINDINGS AND RECOMMENDATION

to amendment.

7.

As a result of said intentional interference, Plaintiff was terminated and has suffered and will suffer economic loss in an amount to be proven at trial, which amount is alleged to be $500,000.

8.

Defendant's acts were malicious and/or reckless and Plaintiff reserves the right to allege punitive damages.

Complaint, ¶¶ 3-8.

## ANALYSIS

This court, sitting in diversity, must apply Oregon's conflict-of-laws rules to determine which jurisdiction's law governs the dispute before it. *See, e.g., Alaska Airlines, Inc. v. United Airlines, Inc.*, 902 F.2d 1400, 1402 (9th Cir. 1990), *citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under applicable Oregon law, the Oregon courts look to "the place where the injury occurred, the place where the conduct occurred, the domicile, nationality, place of incorporation and place of business of the parties, and the place where the relationship between the parties is centered" to determine the jurisdiction whose law should be applied. *See Western Energy, Inc. v. Georgia-Pacific Corp.*, 55 Or. App. 138, 145-146 (Or. Ct. App. 1981). Here, Johnston alleges that KCGS interfered with her employment in Oregon by directing communications calculated to procure the termination of her employment into Oregon, that she is an Oregon resident, and that KCGS is a Delaware entity doing business in Oregon, from which I conclude that the Oregon courts would apply Oregon law to the parties' dispute.[1] When applying

---

[1] Neither party argues for the application of any different jurisdiction's law.

Page 4 - FINDINGS AND RECOMMENDATION

Oregon law, this court is bound by the decisions of the Oregon Supreme Court, and where no such decision is available, must "predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *S.D. Myers, Inc. v. City & County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001), *quoting Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir. 1996).

> Under Oregon law:
>
> To state a claim for intentional interference with economic relations, a plaintiff must allege: (1) the existence of a professional or business relationship; (2) intentional interference with that relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and damage to the economic relations; and (6) damages.

*Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 498 (1999), *citing McGanty v. Staudenraus*, 321 Or. 532, 535 (1995).

Moreover, "[d]eliberate interference alone does not give rise to tort liability." *Id.*; *see also Top Service Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 209-10 (1973) ("[A] claim [of tort liability for intentional interference with a contractual or other economic relations] is made out when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. Defendant's liability may arise from improper motives or from the use of improper means. They may be wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession.").

The *Northwest Natural Gas* court specified that:

> To be entitled to reach a jury, a plaintiff must not only prove that defendant intentionally interfered with h[er] business relationship but also that defendant had

Page 5 - FINDINGS AND RECOMMENDATION

> a duty of non-interference; *i.e.*, that [it] interfered for an improper purpose rather than for a legitimate one, or that defendant used improper means which resulted in injury to plaintiff. Therefore, a case is made out which entitles plaintiff to go to a jury only when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.

*Northwest Natural Gas*, 328 Or. at 498 (citations, internal quotation marks omitted). The court further explained that:

> [I]f liability in tort is to be based on an actor's purpose, then the purpose must be to inflict injury on the plaintiff "as such." And, if liability in tort is based on an actor's means, then the means must violate some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or, perhaps, an established standard of a trade or profession.

*Id.* (citations omitted).

KCGS argues that Johnston's intentional interference claim must be dismissed because Johnston's pleading "is entirely lacking in the factual support necessary to support a claim pursuant to the standards handed down by the Supreme Court in *Twombly* and *Iqbal*," and, in the alternative, because her factual allegations are defective in that she has not expressly pled that KCGS lacked any legitimate motive in addition to its alleged retaliatory motive for interfering with her employment relationship.

I. **Adequacy of Johnston's Factual Allegations**

KCGS' first argument is that Johnston's factual allegations are insufficient to satisfy applicable pleading requirements. The United States Supreme Court recently clarified the pleading standards a complaint must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the

Page 6 - FINDINGS AND RECOMMENDATION

pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. **A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.** *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).

*Iqbal*, 129 S. Ct. at 1949 (emphasis supplied). The court explained that its reasoning was underlain by two distinct legal principles:

First, **the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.** Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, **only a complaint that states a plausible claim for relief survives a motion to dismiss.** *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Page 7 - FINDINGS AND RECOMMENDATION

*Id.* at 1949-1950 (emphasis supplied; modifications original).

The Supreme Court has also recently reaffirmed that Federal Civil Procedure Rule 8(a) does not require that a plaintiff plead specific facts in order to survive a motion to dismiss, but rather need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), *citing Twombly*, 550 U.S. at 555, *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957).

KCGS argues that the allegations of Johnston's complaint are insufficient under the Supreme Court's recent decisions in *Twombly* and *Iqbal*, because the allegations are minimal and conclusory, and amount to no more than unadorned and naked assertions of KCGS' liability. I agree with KCGS that Johnston's factual allegations in support of her claim are minimal, comprising three paragraphs of an eight-paragraph complaint. Thin though they may be, however, Johnston's factual allegations are nevertheless sufficient to state a facially plausible claim for relief, and are therefore sufficient under Federal Civil Procedure Rule 8(a)(2) and the *Twombly/Iqbal* standard.

Johnston expressly alleges that she was an employee in good standing of Banner & Witcoff, Ltd. ("B&W"), that KCGS was a client of B&W, that KCGS purchased a company that was the defendant in a lawsuit brought by Johnston, that KCGS complained to B&W that its employee was maintaining an action against the newly acquired KCGS subsidiary, that when Johnston refused to drop her action against the subsidiary KCGS intentionally interfered with her employment relationship with B&W by pressuring B&W to terminate her employment, that KCGS' purpose in bringing such pressure to bear on B&W was to retaliate against Johnston for maintaining her action against the subsidiary, and that as a result of KCGS' pressure, B&W

Page 8 - FINDINGS AND RECOMMENDATION

terminated Johnston's employment, causing her to suffer damages. *See* Complaint, ¶¶ 3-5. Considered collectively, these allegations give rise to a plausible cause of action for intentional interference with economic relations. *See, e.g., Northwest Natural Gas*, 328 Or. at 498; *see also* Oregon Uniform Civil Jury Instructions 40.04, 57.02. In consequence, Johnston's allegations are sufficient to satisfy the pleading requirements of Rule 8(a)(2) under the *Twombly/Iqbal* standard.

## II. Allegations of Improper Purpose

KCGS' second argument is that Johnston's pleading is fatally defective in that she does not expressly allege that KCGS' alleged retaliatory motivation was its *sole* motivation in seeking to procure the termination of her employment. It is KCGS' position that the Oregon courts do not recognize a defendant's liability for intentional interference with economic relations where the defendant had mixed motives for its interference, and was motivated in part by some legitimate purpose in addition to its improper purpose. KCGS' argument is unpersuasive for two reasons.

First, Johnston expressly alleges that KCGS "intentionally interfered with [her] employment with [B&W] . . . for an unlawful purpose, to wit, to retaliate against her . . . ." Complaint, ¶ 5. Construed in the light most favorable to Johnston, this allegation at minimum permits the reasonable inference that KCGS had no other, additional motivation for intentionally interfering with Johnston's employment relationship – *see, e.g., Boers v. Payline Sys.*, 141 Or. App. 238, 243-244 (1996) (allegation that defendant intentionally interfered with the plaintiff's employment relationship "for the improper purpose to retaliate against plaintiff" sufficient to permit Oregon intentional interference claim to survive a motion to dismiss) – and may even logically "embrace" that proposition, *see Scheidler*, 510 U.S. at 256. Johnston's allegation of improper purpose would therefore be sufficient to support her intentional

Page 9 - FINDINGS AND RECOMMENDATION

interference claim even if KCGS were correct as a matter of law that a defendant with mixed improper and legitimate motives cannot be liable for intentional interference.

Second, KCGS mischaracterizes Oregon intentional interference law. While KCGS correctly notes that at least one Oregon court, *see Boers*, 141 Or. App. at 243, has required an intentional interference plaintiff to plead that defendants lacked the purpose of serving their employer when they took intentional action to interfere with the plaintiff's employment relationship, the *Boers* court imposed that requirement not because the intentional interference tort requires that defendants lack any legitimate motivation before liability may be found, but rather because the *Boers* tortfeasors, who were agents and employees of the *Boers* plaintiff's employer, could only be construed as third parties to the *Boers* employment relationship if the actions they took to procure the plaintiff's termination were taken wholly outside the scope of their employment. *Boers* simply does not stand for the proposition that a defendant may only be found liable for intentional interference where it lacks any legitimate motivation for its actions.

In *Eusterman v. Northwest Permanente, P.C.*, 204 Or. App. 224 (2006), the court affirmed summary judgment against an intentional interference plaintiff on the grounds that the plaintiff failed to establish the defendant's improper purpose. Although the plaintiff had alleged in his second amended complaint that the defendant had been motivated "'in substantial part' because of his exercise of independent medical judgment regarding diagnoses and treatment and his advocacy of the position that other doctors should be allowed to exercise their medical judgment," *Eusterman*, 204 Or. App. at 238, the court noted that in opposition to the defendant's summary judgment motion the plaintiff offered evidence only that the defendant's motive "was to maximize its profits," *id.*, a patently legitimate motive. It was on this basis, and not on the basis

Page 10 - FINDINGS AND RECOMMENDATION

of the plaintiff's failure to plead the absence of any legitimate purpose, that the *Eusterman* court rejected the plaintiff's argument that he had satisfied the "improper purpose" element of the tort. *See id.*

To the contrary, the Oregon courts recognize that an intentional interference plaintiff need neither allege nor prove that the defendant lacked any legitimate purpose for its interference in order to prevail on an intentional interference claim. *See, e.g., Huston v. Trans-Mark Services, Inc.*, 45 Or. App. 801, 806 (1980) ("[i]f proved, together with damages and causation, . . . allegations [that defendant interfered with plaintiff's employment because the plaintiff complained about the defendant's relationship with his girlfriend] satisfied the elements of the tort [of wrongful interference with business relationships]"); *see also* Oregon Uniform Civil Jury Instructions 40.04 (no requirement that plaintiff prove the absence of any legitimate motivation to prevail on claim of intentional interference with economic relations); *cf.* Oregon Uniform Civil Jury Instructions 57.02 (no requirement that plaintiff prove the absence of any legitimate motivation to prevail on claim of intentional interference with employment). Johnston's allegations of improper purpose are therefore sufficient to permit her claim to survive KCGS' motion to dismiss.

## CONCLUSION

For the reasons set forth above, I recommend that KCGS' motion (#9) to dismiss be denied.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections

Page 11 - FINDINGS AND RECOMMENDATION

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 29th day of July, 2010.

*/s/ Paul Papak*
Honorable Paul Papak
United States Magistrate Judge